UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JONATHAN L. GARCIA ESQUEDA, M.D.        :

     Plaintiff,                          :

 - against -                                         :  **COMPLAINT & JURY DEMAND**

NYU LANGONE HOSPITALS, NABIL N. DAGHER, :
M.D., in his corporate and individual capacities, H. LEON  :
PACHTER, M.D. F.A.C.S, in his corporate and individual Civil Action No.
capacities, ZOE STEWART-LEWIS, MD, in her corporate :
and individual capacities, BONNIE LONZE, MD, in her _____
corporate and individual capacities, BRUCE GELB, MD,   :
in his individual and corporate capacities, and JOHN DOES
1 through 10, in their corporate and individual capacities,    :

     Defendants.                      :
------------------------------------------------------------------------X

  By and through his counsel, Jimmy M. Santos, Esq., of the LAW OFFICES OF JIMMY M. SANTOS, PLLC, Plaintiff Jonathan L. Garcia Esqueda, MD ("Plaintiff" or "Dr. Garcia"), hereby avers against Defendants:

## I   THE PARTIES, JURISDICTION & VENUE

1. Plaintiff Dr. Jonathan L. Garcia Esqueda is a forty (40) year old male of Mexican national origin and Hispanic race. At all relevant times, he resided at 350 EAST 30th Street, Apt.1Y, New York, New York 10016.

2. From in or about 2011 to 2015, Dr. Garcia practiced General Surgery for the Mexican Red Cross.

1

3. From in or about 2015-2017, Dr. Garcia did a Fellowship at the University of North Carolina ("UNC") at Chapel Hill, where his focus was liver and kidney transplant surgery.

4. At UNC, Dr. Garcia aided in performing approximately sixty (60) kidney transplants, forty (40) liver transplants and fifty (50) procurements.

5. While in his Fellowship at UNC, Dr. Garcia also provided post- operative care in relation to immunosuppression and clinic visits.

6. From in or about 2017 until in or about August 2018, Dr. Garcia was in private practice in which he practiced General Surgery which included but was not limited to performing and assisting in general surgery cases (such as cholecystectomies, open and laparoscopic, open appendectomies, open hernia repairs, peritoneal dialysis catheters placements).

7. On or about August 15, 2018, Dr. Garcia began his Fellowship in Transplant Surgery (the "Fellowship") at Defendant NYU LANGONE HOSPITALS ("NYU"), and specifically, at NYU Langone Health's Department of Surgery, located at 550 First Ave, New York, NY 10016.

8. At all relevant times during the Fellowship, Defendant Nabil N. Dagher, MD ("Dagher"), who is a Caucasian male of North American national origin and Director of the NYU Langone Transplant Surgery Fellowship Program, supervised Dr. Garcia.

9. In his position as Director, Dagher had the power to directly affect the terms and conditions of Plaintiff's employment with NYU, did negatively affect Plaintiff's

employment with NYU and is being sued in his corporate and individual capacities herein.

10. At all relevant times during the Fellowship, Dagher discriminated against Dr. Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

11. At all relevant times during the Fellowship, Defendant H. Leon Pachter, MD, F.A.C.S ("Pachter"), who is a Caucasian male of North American national origin and the George David Stewart Professor and Chair and was Dagher's colleague and superior.

12. In his position as Professor and Chair, Pachter had the power to directly affect the terms and conditions of Plaintiff's employment with NYU, did negatively affect Plaintiff's employment with NYU, and is being sued in his corporate and individual capacities herein.

13. At all relevant times during the Fellowship, Pachter discriminated against Dr. Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

14. At all relevant times during the Fellowship, Defendant Zoe Stewart-Lewis, MD, ("Lewis"), who is a Caucasian female of North American national origin, worked as a transplant surgeon in the Surgery Department and discriminated against Dr.

Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

15. In her position as Transplant Surgeon at NYU Langone Health's Department of Surgery, Lewis had the power to directly affect the terms and conditions of Plaintiff's employment with NYU, did negatively affect Plaintiff's employment with NYU, and is being sued in her corporate and individual capacities herein.

16. At all relevant times during the Fellowship, Defendant Bonnie Lonze, MD, ("Lonze"), who is a Caucasian female of North American national origin, worked as a transplant surgeon in the Surgery Department and discriminated against Dr. Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

17. In her position as Transplant Surgeon at NYU Langone Health's Department of Surgery, Lonze had the power to directly affect the terms and conditions of Plaintiff's employment with NYU, did negatively affect Plaintiff's employment with NYU, and is being sued in her corporate and individual capacities herein.

18. At all relevant times during the Fellowship, Defendant Bruce Gelb, MD, ("Gelb"), who is a Caucasian male of North American national origin, worked as a transplant surgeon in the Surgery Department and discriminated against Dr. Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being

        Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

19. At all relevant times, Gelb discriminated against Dr. Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

20. In his position as Transplant Surgeon at NYU's Transplant in its Surgery Department, Gelb had the power to directly affect the terms and conditions of Plaintiff's employment with NYU, did negatively affect Plaintiff's employment with NYU, and is being sued in his corporate and individual capacities herein.

21. At all relevant times during the Fellowship, Defendants JOHN DOES 1 through 10 (who have yet to be identified) (the "DOE Defendants") discriminated against Dr. Garcia on the basis of Plaintiff's national origin (being Mexican) and race (being Hispanic), and retaliated against Dr. Garcia soon after Dr. Garcia made a complaint to NYU that Dr. Garcia felt he was subjected to unlawful national origin and race discrimination by Defendants.

22. At all relevant times, the DOE Defendants and is being sued in his corporate and individual capacities herein had the power to directly affect the terms and conditions of Plaintiff's employment with NYU, did negatively affect Plaintiff's employment with NYU, and are being sued in his corporate and individual capacities herein.

23. At all relevant times, NYU employed twenty (15) or more employees, and was Plaintiff's "employer" within the meaning of 42 USC §§ 1981 (or "Section 1981"), the N.Y. Executive Law §§ 290, *et seq.*, i.e., the NYS Human Rights Law (or the "NYSHRL") and the NYC Human Rights Law (the "NYCHRL").

24. At all relevant times, defendants Dagher, Pachter, Lewis, Lonze, Gelb and the DOE Defendants (collectively, the "Individual Defendants") aided and abetted in, ratified and condoned, and/or played a direct role in:

    (a) Subjecting Plaintiff to inferior and disparate treatment on the basis of plaintiff's race (being Hispanic) and national origin (being Mexican);

    (b) Subjecting plaintiff to a hostile work environment on the basis of plaintiff's race (being Hispanic) and national origin (being Mexican);

    (c) Terminating plaintiff's employment and Fellowship at NYU based on plaintiff's race (being Hispanic) and national origin (being Mexican); *and/or*

    (d) Terminating plaintiff's employment with NYU on the basis that he complained of and opposed the aforementioned unlawful race and national origin discrimination and hostile work environment to which he was subjected.

25. The jurisdiction of this Court over plaintiffs' claims under Sec. 1981 is invoked pursuant to 42 USC § 1981.

26. This Court has subject matter jurisdiction over plaintiffs' claims of race and national origin and unlawful retaliation under Sec. 1981 pursuant to 42 USC §§ 1331 and 1343.

27. The jurisdiction of this Court over plaintiff's claims under the NYSHRL and NYCHRL is invoked pursuant to 28 USC § 1367(a) since plaintiff's federal, NYSHRL, and NYCHRL claims all stem "from the same nucleus of operative fact".

28. Venue is proper in this judicial district (the U.S. District Court for the Southern District of New York, or "SDNY") since all of defendants' unlawful employment practices and decisions alleged herein, and/or their adverse effects from these practices and/or decisions on the terms and conditions of plaintiff's employment with NYU were committed and/or occurred within this judicial district.

## II.   FACTUAL AVERMENTS

29. At all relevant times during the Fellowship, Dr. Garcia performed his duties in a highly satisfactory and professional manner.

30. At all relevant times during the Fellowship, Defendants subjected Dr. Garcia to disparate treatment/ discrimination based on his national origin and race in comparison to the Defendants' more favorable treatment afforded to his Caucasian and North American born co-fellows and co-workers.

31. As an example of Defendants' discrimination against Dr. Garcia, Defendants allowed his Caucasian and North-American born co-fellows and/or counterparts substantially more time-off from work.

32. For example, on or about December 6th and 7th, 2019, Dr. Garcia worked a total of twenty-five (25) hours taking into account the amount of time Plaintiff in two (2)

surgeries (i.e., a kidney transplant on 12/06 and a liver transplant on 12/06 and/or 12/07).

33. At all relevant times during the Fellowship, unlike his co-fellows and coworkers, Dr. Garcia would do non-stop work on a regular basis from the beginning of his Fellowship.

34. At all relevant times, there has been a significant difference between the amount of hours Dr. Garcia worked and the lesser amount of hours the other Caucasian and North American-born fellows and/or co-workers (the "Fellows") worked in a row at a given period in time.

35. At all relevant times, the extended periods of time Dr. Garcia worked at NYU in comparison with these Fellows was a recurring situation.

36. For example, Defendants required Dr. Garcia to work the 2019 Thanksgiving Week while the other Fellows took off; *whereas*, Defendants never gave Dr. Garcia the option whether he had to work or could take time off work.

37. For example, Dr. Garcia had to provide coverage while other Fellows had religious days off and their days off went beyond the standard two (2) weekends off period that each fellow is entitled to; Defendants required Dr. Garcia to providing coverage for both Fellows during these other Fellows' religious festivities.

38. At all relevant times, on a frequent basis, Defendants required Dr. Garcia to work more hours than the other Fellows.

39. At all relevant times, on several occasions, Defendants gave more leniency towards other Fellows' assignment of working hours in comparison to that given to Dr. Garcia.

40. At all relevant times, unlike their inferior treatment of Dr. Garcia, Defendants never asked co-Fellow Dr. Shani Fruchter, a Caucasian female of North American national origin, ("Fruchter") to evaluate patients at night although she lived in Brooklyn.

41. At all relevant times, on multiple occasions, unlike the other Fellows, Dr. Garcia's workload was more for him than for the other Fellows.

42. At all relevant times, on several occasions, upon information and belief, Defendants required Dr. Garcia to come during evening hours to see patients and to evaluate consults in the Emergency Room although other Fellows were not required to do this.

43. Throughout the duration of the Fellowship, Dr. Garcia came during the night to evaluate patients (both, in the hospital rooms and ER) despite his not receiving

44. Although other Fellows would not do the same amount of work as Plaintiff and would leave early; Defendants did not penalize these other Fellows for leaving early.

45. At all relevant times, on many occasions, and in addition to his clinical duties, Defendants required Dr. Garcia to perform English-Spanish translation services without giving him additional compensation.

46. Although this was not part of Dr. Garcia's obligations under the Fellowship, Dagher would ask Plaintiff to transport patients from their beds to the operating

room ("OR") although there is a transport service in the hospital; *whereas*, Defendants did not require the other Fellows to do the same.

47. In addition, unlike the other Fellows, Defendants asked Plaintiff to come to work before the credentialing process and Defendants did not compensate him for this time.

48. At all relevant times throughout the Fellowship, Dr. Garcia acted in a highly professional manner and did not raise his voice nor show any disrespect towards patients, his superiors, nor the other Fellows and co-workers.

49. For example, in or about June 2019, Fruchter (who is Caucasian and of North American national origin) falsely accused Dr. Garcia of raising his voice to her for which Defendants required Dr. Garcia to write a "reflection" and Defendants did not discipline this other Fellow despite her making misrepresentations about the incident to Defendants.

50. Also, around the same time, Fruchter was required to help for an emergency surgery, and although she took several hours to arrive from her house, Defendants never placed her on probation nor sanctioned her although they knew about this.

51. At all relevant times, on several occasions, Dr. Garcia's co-Fellows, supervisors in the transplant department, and other co-workers (all of whom are Caucasian and of North American national origin) would use profanity and yell while at the Operating Room ("OR") and elsewhere at NYU's surgery department.

52. Although, upon information and belief, as per written policies, NYU does not allow the use of profanity and yelling at work, and Defendants knew that some of Dr. Garcia's superiors, co-Fellows and/or co-workers engaged in such conduct,

Defendants would not discipline Dr. Garcia's colleagues who showed such behavior.

53. On one (1) occasion in or about October 2019, Holly Foote, MD (a Caucasian of North American national origin) ("Foote") cursed at Dr. Garcia and Plaintiff told her that he felt uncomfortable about the situation.

54. Soon thereafter, Dr. Garcia told Dagher that he felt uncomfortable and offended by Foote's cursing at him; *however*, instead of disciplining Foote, Defendant Dagher disciplined Plaintiff.

55. As another example of Defendants' national origin and race discrimination against Dr. Garcia, in one (1) occasion when Dr. Garcia worked with Dr. Stewart-Lewis (a Caucasian female of North American national origin) ("Lewis"), Defendants took no disciplinary action when Lewis closed skin she left of a big ear dog [1], Lewis said - "I will blame the fellow" - and laughed. Lewis assigned blame to the patient because he allegedly was "bubbly", which Defendants knew.

---

[1] A dog ear is like one that you can see in figure 1, instead of seeing the edges like figure 2



56. On several occasions, in violation of NYU written policies, Dagher himself used profanity, such as when he talked to Dr. Garcia, and routinely when he made rounds with patients and when he was in the OR. Again, this is forbidden as per NYU's policies.

57. Similarly, on another occasion, Gelb (a Caucasian male of North American national origin) performed a lumbar puncture ("LP") without sterile globes, mask and hat.

58. Although Defendants knew about this, Defendants took no disciplinary action against Gelb.

59. On another occasion, when Gelb performed a kidney transplant on one side, the patient had a fistula on the leg, Dr. Garcia suggested doing it on the contralateral side; *however*, Gelb ignored Plaintiff's recommendation.

60. As a result of Gelb's ignoring Dr. Garcia's advice, despite Defendants' knowledge of Gelb's inaction, the patient lost the kidney by thrombosis the next day.

61. At all relevant times, as another example of the unlawful national origin discrimination to which Dr. Garcia was subjected by Defendants, on several occasions, Dagher and Foote laughed about Dr. Garcia's accent.

62. Although Defendants knew about Dagher and Foote repeatedly laughing about Dr. Garcia's accent, Defendants never asked them to write a reflection nor were they disciplined in any way after Plaintiff discussed these incidents with Dagher.

63. Similarly, on several occasions, Dagher himself laughed about Dr. Garcia's accent and he made fun of Plaintiff when Dr. Garcia pronounced terms such as

"acidemic" and "subtle", Dagher said, in sum and substance - "sometimes it is hard not to laugh at this [the way Plaintiff would pronounce words in English at times".

64. On one (1) occasion while Plaintiff was walking on 34th Street in Manhattan and ran into Dagher.

65. Without any provocation, Dagher told Dr. Garcia - " Jon, if you present the patients like the way you presented them today I will destroy you next year" although he did not address any other Fellows or Plaintiff's coworkers in that manner.

66. On December 25, 2019, Dr. Garcia submitted an appeal (the "Appeal") of Defendants' decision to suspend him to Dagher and Pachter and NYU's EEO office.

67. In the Appeal dated and submitted on December 21, 2019, Dr. Garcia complained in detail (the "EEO Complaint") that he believed Defendants had subjected him to unlawful race and national origin discrimination.

68. In retaliation for Dr. Garcia's sending the Complaint to Defendants, soon thereafter on December 30, 2019, Defendants issued a letter dated December 30, 2019 in which Defendants notified Dr. Garcia that he was dismissed from the Fellowship (the "Termination Decision").

69. Dr. Garcia's Ad Hoc Committee at NYU thereafter heard Plaintiff's appeal but upheld the Termination Decision.

70. As a result of Defendants' national origin and race discrimination and unlawful retaliation against Dr. Garcia, Plaintiff has and will likely continue to suffer

significant economic consequences, lost professional opportunities, which includes lost back and front wages, as well as physical sickness and emotional distress.

71. Defendants' acts of unlawful discrimination and retaliation were malicious and wanton, and Defendant NYU must be punished and deterred by imposing punitive and/or liquidated damages on it. Defendants' disparate treatment and termination of Dr. Garcia's employment due to his national origin and race, and as retaliation for opposing and complaining about Defendants' unlawful discrimination and harassment were intentional and in violation of Sectional 1981, the NYSHRL, and the NYC Human Rights Law (the "NYCHRL").

**AS AND FOR PLAINTIFF'S 1st CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR BEING SUBJECTED TO DISCRIMINATION AND A HOSTILE WORK ENVIRONMENT ON THE BASIS OF HIS RACE AND NATIONAL ORIGIN IN VIOLATION OF SECTION 1981**

72. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs 1 through "71" above.

73. As described in more detail above, through the acts of the Individual Defendants, defendant NYU subjected Dr. Garcia to discrimination, including but not limited to termination of plaintiff's employment, and an unlawful hostile work environment impermissibly based on plaintiff's race (being Hispanic) and national origin (being Mexican) in violation of 42 USC §§ 1981, *et seq.*.

**AS AND FOR PLAINTIFF'S 3rd CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR BEING SUBJECTED TO DISCRIMINATION AND TO A HOSTILE WORK ENVIRONMENT ON THE BASIS OF HIS RACE AND NATIONAL ORIGIN IN <u>VIOLATION OF THE NYSHRL</u>**

74. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs 1 through "73" above.

75. As described in more detail above, through the acts of the Individual Defendants, all defendants subjected Dr. Garcia to an unlawful hostile work environment impermissibly, including but not limited to his termination, based on plaintiff's race, color and national origin in violation of N.Y. Executive Law §§ 290, <u>*et seq.*</u>

**AS AND FOR PLAINTIFF'S 4th CAUSES OF ON AGAINST ALL DEFENDANTS FOR BEING SUBJECTED TO RETALIATION AND A HOSTILE WORK ENVIRONMENT ON THE BASIS OF PLAINTIFF'S OPPOSING UNLAWFUL RACE <u>DISCRIMINATION IN VIOLATION OF SEC. 1981</u>**

76. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs 1 through "75" above.

77. As described in more detail above, through the acts of the Individual Defendants, defendant NYU subjected Dr. Garcia to retaliation, including but not limited to termination of plaintiff's employment, and an unlawful hostile work environment for his opposition to and complaint of being subjected to unlawful race discrimination in violation of 42 USC § 1981.

**AS AND FOR PLAINTIFF'S 5TH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR BEING SUBJECTED TO DISCRIMINATION AND A HOSTILE WORK ENVIRONMENT ON THE BASIS OF PLAINTIFF'S OPPOSING UNLAWFUL RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE NYSHRL**

78. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs 1 through "77" above.

79. As described in more detail above, through the acts of the Individual Defendants, all defendants subjected Dr. Garcia to discrimination, including but not limited to termination of plaintiff's employment, and an unlawful hostile work environment for his opposition and complaint of being subjected to unlawful race and national origin discrimination in violation of N.Y. Executive Law §§ 290, *et seq.*.

**AS AND FOR PLAINTIFF'S 6TH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR BEING SUBJECTED TO DISCRIMINATION AND A HOSTILE WORK ENVIRONMENT ON THE BASIS OF HIS RACE AND NATIONAL ORIGIN IN VIOLATION OF THE NYC HUMAN RIGHTS LAW**

80. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs 1 through "79" above.

81. As described in more detail above, through the acts of the Individual Defendants, defendant NYU subjected Dr. Garcia to discrimination, including but not limited to termination of plaintiff's employment, and an unlawful hostile work environment impermissibly based on plaintiff's race (being Hispanic) and national origin (being Mexican) in violation of the NYC Human Rights Law.

### AS AND FOR PLAINTIFF'S 7TH CAUSES OF ACTION AGAINST ALL DEFENDANTS FOR BEING SUBJECTED TO RETALIATION ON THE BASIS OF PLAINTIFF'S OPPOSITION TO THE UNLAWFUL RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF THE NYC HUMAN RIGHTS LAW

82. Plaintiff hereby repeats and re-alleges each allegation contained in paragraphs 1 through "81" above.

83. As described in more detail above, through the acts of the Individual Defendants, all defendants subjected Dr. Garcia to retaliation, including but not limited to termination of plaintiff's employment, and an unlawful hostile work environment for his opposition and complaint of being subjected to unlawful race and national origin discrimination in violation of the NYC Human Rights Law.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays that this Court empanel a jury of plaintiff's peers, and enter judgment against defendants as follows, in an amount to be determined at trial in this action, inclusive but not limited to:

(a) an award of damages for all back and front wages owed plaintiff due to defendants' termination of his employment based, in whole or in substantial part, on his race and national origin and in retaliation for his complaint and opposition to an unlawful hostile work environment in violation Title VII, Section 1981, the NYS Human Rights Law and the NYC Human Rights Law in an amount to be determined at trial in this action;

(b) an award of full compensatory damages against defendants, including payment to plaintiff's suffering physical and mental distress and injury, mental anguish, humiliation, and

embarrassment from defendants' unlawful discriminatory and retaliatory acts, in an amount to be determined at trial under Sections 1981 & 1988, the NYS Human Rights Law and the NYC Human Rights Law;

(c) an award of punitive damages against all defendants for their unlawful discriminatory, hostile and retaliatory acts against plaintiff as alleged herein, and in an amount to be determined at trial under 42 USC §1981a, 42 USC §1981, the NYSHRL and the NYCHRL;

(d) an award of plaintiff's reasonable attorney's fees and the costs of this action under the Title VII, 42 USC §1981and/or 42 USC § 1988, the NYS Human Rights Law, and the NYC Human Rights Law; *and*

(e) any such other and further relief as this Court may deem just and proper.

Dated: December 2, 2021
       Cornwall, New York

                                    Respectfully Submitted,

                                     */S/ Jimmy M. Santos*
                                    Jimmy M. Santos, Esq. (JS-0947)
                                    LAW OFFICES OF JIMMY M. SANTOS, PLLC
                                    28 Wilson Place
                                    Cornwall, New York 12518
                                    Phone: (845) 534-3185
                                    Fax:   (845) 595-2266
                                    *Attorney for Plaintiff Dr. Jonathan L. Garcia Esqueda*